First case of the first day of this panel sitting. We have four arguments this morning. We'll hear the first two and then take a brief recess and then pick up the final two. I think this group's familiar with our lighting system and those in the audience who are coming up later probably are as well. Key thing is red light, stop. Do finish your sentence or whatever else and if we decide to give you more time we will do so. Don't depend on it. Our first argument of the day United States v. Henry Franklin Reddick. Are you familiar with our lighting system? If he isn't, we're lost. May it please the Court. Your Honors, in this case the District Court assumed that Detective Isles violated the Fourth Amendment by conducting a warrantless search of digital files that were contained in a cyber tip from the National Center for Missing and Exploited Children. The Court nevertheless denied Mr. Reddick's motion to suppress based on the good faith exception to the Fourth Amendment. The District Court committed reversible error in two ways. First, it should have applied the independent source doctrine rather than the good faith exception. Second, even if the good faith exception applied, it misapplied that exception. First, the District Court erred by failing to apply the independent source doctrine, which the Supreme Court has approved. If a person commits a Fourth Amendment violation and then obtains a warrant, a court must suppress the evidence. If the evidence found during the violation motivated the officer to get the warrant. Also, was the District Judge presented with this argument that independent source is exclusive and to even consider good faith was inappropriate? No, Your Honor. When does it first get presented in this case? On appeal, Your Honor. All right. How does that affect, do you think, what we would usually do with such an argument? I don't think it affects at all, Your Honor. The government was obliged to come . . . given the Fourth Amendment violation, the government was obliged to come forward with an exception. They only came forward with one exception. So I think the District Court erred. Either the government waived the issue and there's just a Fourth Amendment violation here, or the District Court erred by not applying the exception. So it was up to the government to find an exception to the warrant once the District Court found a Fourth Amendment violation. And here, the independent source doctrine definitely calls for reversal because Detective Isles stated point blank that he never relies on the hash values. He only relies on the images, which he opens up without a warrant, and then he then gets a warrant based on those images. You say that the government may have waived the argument. Just to be clear, I assume you agree we can affirm for any reason that's available in the record. The government won below. I don't think you can affirm because the independent source doctrine applies, and if it doesn't and it should have applied, then I think you're just left with a Fourth Amendment violation. I think you're just left with a Fourth Amendment violation. Are you continuing your waiver point? Are you responding to our general rule that we can affirm on any basis supported by the record? In other words, I understand that you contest the issue on the merits and hotly so. My only point is that all the arguments are available to us. Do you agree? And I'm disagreeing with that, Your Honor. I disagree. Generally, you can affirm on any ground, but where the Supreme Court says this is the doctrine you apply in these circumstances, meaning the independent source doctrine, you can't go on and say, okay, well, we're going to ignore that and then affirm on some other ground. And so it's basically the same argument. What I'm saying is the court is stuck because the Supreme Court says you're stuck with the independent source doctrine. And you can't go on to good faith because I say in our brief, good faith, if you use good faith where the independent source doctrine applies, it reads the independent source doctrine out of the law. The Fifth Circuit cases on independent source doctrine don't even need to exist. You can erase them from the books because you just jump over the subjective intent of the officer under independent source and go on to good faith, which is objective. So the two are in conflict. And I think I've thought it's a conundrum because independent source, as I said, is subjective. Good faith is objective, so they conflict. And so I think I've thought of a way that the court can reason its way out of this conundrum. In Restrepo, this Court said independent source is one test and probable cause is a second test. And so I would suggest to the court that independent source comes first and good faith normally goes to probable cause. So under Restrepo, you would do independent source, then you go to probable cause, and then as the court usually does, for example, in Massey, says, well, on probable cause, it's close enough to the line or the officer thought he had probable cause, and so this is okay. But because they're two independent inquiries, the only way I could reason my way out of this was to think, okay, well, good faith goes to the probable cause prong, not to the independent source prong. And amazingly enough, I don't know why there's no case on this. I don't know why no one's, at least from my research, no one's ever seen there's independent source, subjective, good faith, objective. But I think the reason there's no case on both is because they normally would apply independent source, and that would be the end of the question. JUSTICE SCALIA, my understanding of your point, you are relying on the fact that cases you think are similar to this have used independent source, but none of those cases seem to say that that is the only doctrine that can be used. You're just interpreting that it's the applicable doctrine. Is there a case out there in the Big Court or our Court that said if independent source is relevant, that is the only applicable doctrine, and if it doesn't apply, game over? There's no case that says that, but the Supreme Court has said there is no case. And I don't know of any case that ever thought of the conundrum that I saw in this case. But the Supreme Court said — It's too clear to need a case? Is that the point? I'm sorry? It's too clear to need a precedent? Is that your point? Well, it's too clear under Supreme Court precedent — I'm not being just facetious, but I think that is your point, isn't it? It's too clear that independent source applies, and you stop there. Because the Supreme Court said when an officer views evidence during a Fourth Amendment violation and gets a warrant, you look at the officer's subjective intent. That's what you do. End of case. And so I think it's too clear to need a case because the Supreme Court has told us what to do in these circumstances. Well, why don't you address independent source itself? We were — are to say that the government, if it is applicable indeed, could use — we could use that doctrine to affirm. Why is independent source not going to help the government in this case? I'm sorry, why would — Just get to the merits of independent source for me. Yes. Well, Detective Ills said he always opens the digital files and doesn't rely on hash values and then gets a warrant. And given the Fourth Amendment violation, he saw the files, got a warrant based on the files to search Mr. Reddick's house. So on independent source, it's clear he was motivated by the information he gained during his Fourth Amendment violation. You know, I wonder whether that's — whether that's really the case. I mean, he — and as far as he was concerned, he had probable cause. I mean, he had a basis for getting a warrant right then. He opens up the files, I mean, partly perhaps to have to explain to somebody who doesn't understand it as well as he does why he's doing this. But I don't — I don't think that — I don't think that you can assume that that particular officer thought that what he was doing was contrary to the Fourth Amendment. I think — Now, I realize that that's — usually when some lawyer gets up and makes that argument to me, I'm thinking, oh, dear. But, I mean, given all of the scientific background that they had for this, which really is what the case rises or falls on, it seems to me, the idea that at that particular point, because he's a belt and suspenders man, this case is over, doesn't seem correct to me. Well, I think as I read his testimony, he said this is what he does. He opens the files. Well, I understand that's what he said, you know, and you've got to give him credit for being up front. But still, I mean, given what he knew about the quality of the information he had, the idea that because he's going to always check it at the last minute, we've got a Fourth Amendment violation, do — I mean, I have to say, I don't — I'm not sure I see that. Well, that, Your Honor, that gets us to, I guess, good faith and Fourth Amendment. And if we jump to that, then the question becomes, what did Detective Iles have? And what — and number one, he said he doesn't rely on hash values, but putting that aside, this case is a lot like the Keith District Court case because the provenance of the library that was used and the hash values is unknown, which was the case in Keith. And the — what happens is the district court even made a finding that no criteria for the library was in the record for — no person who made the determination of what goes into the library was in the record. And it's right in the district court's — right in the beginning of its opinion, it found multiple contributors go into that — make the decision on that library. The district court — the record contains no criteria governing what images are included in it or who makes the decision. And the original images in the database are And so, just as in Keith, the provenance of the library that's being used for comparison is unknown. So just as the district court held in Keith, when you look at the hash values and the comparison, you see that this matches some other file, but you don't know what that file is because there's no provenance for who determined it and what criteria were used. So there's a comparison, but — and I think this is what you're getting at, Your Honor. You're saying, well, he had that the hash values matched, but in this case — and that's why this record's so important — the question is, what did it match? And the district court in Keith actually — that quote's in the brief. It says, okay, it matched something, but who knows what it matches? And then the district court — the case Miller that the Yes, Keith went off on the ground that there was no provenance for the hash value library that was compared to. But here, we know — we have a provenance, and the investigators looked at the images in the library, so this is different. So, Your Honor, to respond to your question, he didn't — we don't know what the provenance is for that comparison, so he didn't have a probable cause, because it matched something, but we don't know what it matched. So in a way, what you're maybe saying is, if the government was going to go down this path, they needed to lawyer it better. They needed a better record, yes, Your Honor. They needed a record of what would — they needed to lawyer it better, they needed a better record and more facts and evidence to tell us what the provenance of the comparison library was so that you could say, oh, this is — look, there's probable cause, because we know here's how it's determined, we know it's reliable, we know who does it, we know what the criteria are, and so, yes, Detective Isles did have probable cause. With regard to the Fourth Amendment — and that's also why Walter applies, because when the provenance of the file is just a question, then this case becomes like Walter, we know we have some labels on some packages or some film, but we don't — I'm sorry, we know that there are some images, but we don't know what they are, and so like Walter, looking further and opening up the images is going farther than what the independent entity or the private entity did. So Walter would apply for the same reason, because there wasn't a private entity that looked at what was ultimately seen. Finally, I'd just say that in our brief, we show that the Fourth Amendment does apply, that it was violated. I just want to point out that in Riley, with regard to the Fourth Amendment protection for digital files, in Riley, of course, the Supreme Court was talking about privacy of cell phones, but there's a passage in Riley where the Supreme Court goes on to say, and this violation, you know, this is even worse because the cell phone connects to something else, which would be Internet, and so that makes the violation even worse. So I don't even think there's a question that digital files are protected by the Fourth Amendment and that the Fourth Amendment was violated here. For these reasons, Your Honor, I'd request that you reverse the district court's decision and remand. Thank you very much. Thank you. We'll hear from you again. Good morning, and may it please the Court. Andrew Gould for the United States. Although this appeal presents a novel Fourth Amendment issue, the law provides clear answers. First, Detective Ilse's warrantless search of Mr. Reddick's digital files did not violate the Fourth Amendment because that search did not impermissibly exceed the scope of Microsoft's photo DNA search, which effectively revealed those files to be child pornography. Even were this court I need to understand what part of the search was conducted by a private party and what was done by the State. I think I understand, but I want to make sure I Here's the process, at least as in this case, Judge Ho. Microsoft is the initial party who conducts the search. They do this, Microsoft does this because they have a business interest in keeping child pornographers off of their services. So they on their own conduct the hash value search. At that point Mr. Reddick obviously voluntarily chose to use the Microsoft Correct. And this is a cloud storage program that uploaded his files to it. And I believe his testimony was that he didn't know that they were being uploaded, but be that as it may. Then what happens, under 18 U.S.C. 2258A, once an ESP, an electronic service provider such as Microsoft, has reason to believe that there is known child pornography, they are then obligated to report that to the National Center for Missing and Exploited Children known as NCMEC. NCMEC in turn then reports it to the law enforcement entity that is associated with that subscriber. It used to be the case, so far as I'm aware, that NCMEC at one point their analysts did open the images. And you saw that in the Ackerman opinion that now Justice Gorsuch wrote for the Tenth Circuit. That does not appear to occur anymore. And now instead, in this case, what happens is NCMEC gets a cyber tip from Microsoft and immediately passes it to the local law enforcement entity, here being the Corpus Christi Police Department. Then that cyber tip in this case is just not only it's information about the file names, but they also attach the files themselves. And so what happened was Microsoft, the private party, did a hash value search. NCMEC as an intermediary passed it on to the Corpus Christi Police Department, and then the officer then opened those files. So Microsoft, obviously a private party. And that's not disputed. Right. Determines that a particular file has a hash value or set of hash values that matches child pornography. Correct. Using information from NCMECs. Pardon me, is there any evidence in the record or established through judicial cases that indicate what the risk is that you get a hash value and, in fact, it doesn't match the file that you thought it matched? Do you know what I'm saying? Yes, I understand, Judge Hogan. No, there are no cases. It's also because this is, it's a novel issue. It's actually one that's being litigated frequently in district courts around the country because of the prevalence of cyber tips, and that's why we support oral argument and why we're pressing this Fourth Amendment issue. There aren't any cases, but we have the district court's own factual finding here at ROA 93 and 94. This came in response to Mr. Reddick's argument in the supplemental briefing stage before the district court, and what he, again, presses on appeal, and what you've heard from my friend, is that somehow we don't know whether these files are actually child pornography. It's not that we have a problem with hash values searching that it's a match, but we don't know that it's child pornography. The evidence that Mr. Reddick cited below for that proposition were two news articles. The first article involved a pornographic actress who was misidentified as a minor. The second news article were parents or grandparents who took photos of their naked children, I believe, in bathtubs. They went to develop those photos, and they were then turned over as suspected child pornography. Here's the critical point here. None of those news stories have anything to do with the hash value database. None of them say that, oh, by the way, this, for example, in that first article with the pornographic actress, that that file is in the hash value database. And so this argument was pressed to the district court, and here's what the district court found, and I'm going to quote from the record here. There is no evidence that such over-inclusiveness has occurred in the NCMEC database or is widespread impugning the overall integrity of the database. Instead, law enforcement regularly relies on a hash value match with the NCMEC database results to successfully identify images that are indeed images of child pornography. That's a factual finding by the district court. Mr. Reddick hasn't shown that finding to be clearly erroneous because, again, it's the same argument as below. It's, well, we don't know. And here are these two news articles. It's the same argument that the district court rejected. Can I ask a question? Yes. Microsoft is acting here as an agent for law enforcement? Not at all, Your Honor. Oh, no? No, they are not, no. I mean, that, it is not You're just good, good guys working with the government? Yes, Your Honor. I mean, this isn't, again, it's not disputed here. It's not disputed here that they are a private actor. You can see in district court cases that we've cited in our brief, I believe Stratton and Ackerman on remand from the Tenth Circuit discussed this, not necessarily with Microsoft, but with Google or Sony or others. They, no, they are not acting on the behest of law enforcement. Again, they have a individual private business interest in keeping them out. I understand that. I understand that. So when you fall into their clutches, let's say you are a pornographer. I guess that's a word. And you fall into the clutches of Microsoft. Maybe you didn't even know you were going to be in their clutches, but you are. They don't warn you that we're going to, if we find any unlawful material, material that we think may be unlawful, like porn, on your data, we're going to turn it over to the police. They don't warn anybody about that. I disagree with that, Judge King, and that's because of the... Well, I'm not making a statement. I mean, I was asking a question. Sure. They do warn them, and that's in the services agreement, or the terms and services. Now, in this case, to be candid, the district court excluded, we presented the terms and services agreement of OneDrive, which is the successor program to SkyDrive, which is what Mr. Reddick initially signed up for. But what the officers testified to below, and again, the grants of the district court did not credit this, was that the terms are materially the same. If you look at the terms and services for OneDrive, which is in the record, I believe, starting at ROA 573, you'll find at the very outset, it says, here are rules you cannot break. Don't do anything illegal. Don't engage in any activity that exploits harms children. And then it says, we reserve the right to review your content for violations of this. So, in there, Microsoft is warning them, your files aren't necessarily private. But again, I want to be very clear, again, it's not an issue in this case, but no, Microsoft is not a government agent. That is emphatically not our position. Microsoft, Google, Sony, whoever it is, nobody is required to create these databases. All right? Microsoft on its own could decide, we are not, you know, this is too much trouble. Hash value searching is too expensive, and so we don't even want to do it. And anybody, you can upload whatever you want to our servers. At that point, 18 U.S.C. 2258A would not be triggered, because Microsoft would have no idea that there is known child pornography on their servers. It's their decision to create this platform, and then to search it, that then triggers the statutory obligation to turn it over. They are not acting on the behest of law enforcement. No, wait a minute. Let's back up. Just say that, what you just said again. It is Microsoft's decision to create the database. Is that what you're saying? Yes, that's correct. You used the word they. It's Microsoft's decision to create the database, and then turn it over to law enforcement. They're not doing that at the request of the government. Yes, that's correct. Yes. So Microsoft, and this is in the record, photo DNA was created in the early 2000s by Microsoft and Dartmouth College to kind of create this platform for rooting out child pornography. It was not at the behest of law enforcement. I still want to stick with the Fourth Amendment violation point, at least for a little bit longer with the Court's permission, because I think it's important that the one case that does not go mentioned in Mr. Reddick's reply brief that the government relies heavily upon beyond Walter and Jacobson is this Court's opinion in Runyon. In Runyon, Runyon applies the private search doctrine to the digital context, and they say there are two questions. First, did the government learn something from the search that it couldn't have learned from the private searcher's testimony? And second, if so, does the defendant have a legitimate expectation of privacy in that information? Applied here, the answers to both questions are no. To the first question, Runyon further clarifies what it means for an officer to learn new information within the meaning of a Fourth Amendment search. In Runyon's words, an officer does not learn new information when he is substantially certain, substantially certain of what he will find inside that closed container based on the private searcher's testimony, his replication of the private search, and his experience. Here, Detective Ilse readily had that substantial certainty that he would find child pornography. He had the photo DNA hit above everything, and the reliability of that database, both in terms of the hash value searching, as well as the fact that there are, that there's no evidence of any false positives. So even before he opened the file, in effect, Microsoft had opened it for him. Is that an objective test under Runyon, or subjective, whether he is substantially certain of what's in the file? I don't believe, Judge Southwick, that it States whether it's objective or subjective. I would guess that it's probably objective, not subjective. But I — What do you say here of what Mr. Sokolow returned to several times, that this particular Corpus Christi investigator, for whatever reason, always wanted to make sure the files were what they were purported to be? Yes. So, and that's because he had no reason to believe that this was an unconstitutional search. I mean, he — Frank — I mean, he very candidly testified to this at 320 and 321 and 329 and 30. I mean, he said, this is what I do, and this is what every investigator that I know of who investigates these cases do. It's not — I mean, if he thought that this was unconstitutional, why would he be so forthright? And this — I guess this gets to the good-faith exception point and close enough to the line of validity. Why would the State judge have signed the warrant? I mean, after all, he truthfully recounted the circumstances under which he uncovered the images in his search warrant affidavit. He said, I opened these files. Well, if it was so clearly unconstitutional, wouldn't you expect the State judge, a neutral and detached magistrate, to deny the warrant? So, yes, subjectively, Detective Ilse believed that this was perfectly fine under the Fourth Amendment, but objectively, any reasonable officer would. And I guess this goes into the good-faith exception point and close enough to the line of validity. The close enough to the line of validity inquiry asks, would a reasonable officer have known that his conduct was categorically unconstitutional? And the answer here is no. I mean, there is no circuit precedent on this point. There are a few district court cases. The most recent ones, which we've cited in our brief, Miller and Wilson, say that this is perfectly acceptable under the Fourth Amendment. To Mr. Reddick's credit, Keith from the District of Massachusetts says otherwise. But you do have two Federal judges from other districts, by the way, in the wake of Riley, saying that this is perfectly okay under the Fourth Amendment. Under those circumstances, how would an objective officer have known that this was categorically unconstitutional? The reason that I hear from Mr. Reddick is that, well, Detective Ilse should have known because of Riley v. California. Well, Riley is simply an apposite. To begin, we are not contesting the fact that digital files are protected under the Fourth Amendment. But this case is much more complex than that. This case has to do with when a third party conducts a search, sees what's in there, and then turns it over to law enforcement. What happens? This is not a warrantless search incident to arrest, as was the case in Riley. Certainly, if Detective Ilse, let's say, had stopped Mr. Reddick for a traffic violation, rifled through his cell phone and saw these images of child pornography, clearly Riley would apply. But that's just not the case here. So, and then — Kennedy, what's your deal with the argument from Mr. Socolow that independent source is the only applicable doctrine and it was waived by the government? We disagree as to both points. That is that it's the only applicable doctrine and also that we've waived it. I'd like to begin with the first point. As we stated in our discussion, Circuit, Supreme Court, that treats the good-faith exception and the independent source doctrine as a one-or-the-other proposition. You know, I keep — I heard my friend keep saying, well, the Supreme Court says this, the Supreme Court says this. Where does the Supreme Court say this? It's news to me. Isn't he just saying — I mean, you know better than I am what he's saying, but it seems to me what he's saying is that when these sorts of facts arise, that's the doctrine that's applied, and it would be helpful to his argument if they then said this is the doctrine that has to be applied, but nonetheless, that is the doctrine that's been applied. Does that at least seem to be a fair characterization of similar fact patterns? I don't want to characterize it for him, but let's assume that that is the characterization. Then one would expect Massey to have said that. Why would Massey have gone off and created — Well, it's maybe poorly written. I don't believe — I think it was very well written, Judge. One would have expected Massey to have addressed that point, because, of course, Massey talks about the four known exceptions to the exclusionary rule, one of which, of course, is the independent source doctrine. And then it gets on to the fifth exception, which Mr. Reddick vigorously disagrees with, and again, to his credit, others — two other circuits have held — have rejected this. But this Court went the other way. This Court went with the majority of circuits and said that you can't obtain a warrant on the basis of tainted evidence if two criteria are met, and we think that's right. Again, I don't know of any case that says that only the independent source doctrine can apply. I don't think the government has waived the argument, either. We have stated in our brief that, based on the statements in Runyon, we don't think that there's necessarily facts in the record to support this Court on its own applying the independent source doctrine, and that's because, in Runyon, they remanded for consideration of whether the officer would have sought the search warrant had he known that his conduct was constitutional, because there were no factual findings in the record. That's the case here, too. There aren't any facts in the record that state that — what Detective Ilse would have done, and I think it's important to note, and I would urge the Court, if it's inclined to go down this route, please review what Detective Ilse said at 320 and 21 and 329 and 330. He did not say — he did not say that he never would apply for a search warrant under these circumstances. He basically said this was his practice. I suspect, although, of course, again, there are no facts in the record on this point, I suspect that if he knew or had reason to believe that this was unconstitutional, he would have said, I would have gone out based on the hash value alone and gotten a warrant. But again, we acknowledge those facts are not in the record, and so if this Court is somehow inclined to find that there was a Fourth Amendment violation, that the good faith exception doesn't apply, we've alternatively requested that this Court remand for consideration of the independent source doctrine, as well as the reasonable expectation of privacy related to the terms and services, to get back to Judge King's point. So — Let me ask, if the terms and services had been introduced and accepted, is that the reasonable expectation of privacy, and it just wasn't fully developed in this case because of the district judge's ruling? I mean, is the rest of this sort of moot, if the services agreement says if we find this sort of stuff, we're going to turn it over? I see my red light is on, if I may answer the question. Chief, thanks for noting the light, and please answer the question. Yes. Our position would be that had the district court accepted the one-drive agreement, that this would be moot. We would — I'm sure we would still be making the alternative private search doctrine point. But in Wilson, one of the cases cited by the government, and Wilson cites other cases, I think there's also Stratton and Ackerman. These are all district court cases. They find that based on the terms and services, that vitiates any expectation of privacy. What the Wilson, which is a southern district of California, they then — the Wilson court then goes on to say, alternatively, it doesn't violate the private search doctrine. All right, counsel. Thank you. Thank you, Your Honors. Your Honor, in rebuttal, first of all, there's no agreement in the record that applies to Mr. Reddick. The government tried to introduce an agreement that is later in time, after the name of the service changed, but there's no agreement in the record that applies to Mr. Reddick. Second of all, in that regard, the government doesn't have two cases on its side. Wilson, as the government noted, goes off on the fact that there was an agreement that applied in that case, and therefore, there was no expectation of privacy. So that doesn't apply. But Wilson, which the government thinks is on its side, said, had it applied, the good faith exception would not apply because the warrant would have been obtained by tainted evidence. So there aren't two cases on the government's side. Second, the district court found that there was — that, as I said, there was nothing in the — or nothing that the government introduced supported the provenance of that database. So for the government to say, well, we didn't come forward and show that the database was flawed, that was their burden. It was their burden to show that the database was reliable and that the good faith supported it. For the district judge to make a finding that there was nothing put on by the government that makes this thing reliable, then doesn't give us a burden to do anything. Third, with regard to Runyon and Substantially Certain, the record in this case doesn't show that Detective Isles was substantially certain. It shows the opposite. He says he doesn't rely on hash values. And he said no investigator in his position would. That shows that he wasn't substantially certain or would have gotten the warrant. And finally, with regard to the — well, third point, with regard to the detective believing he wasn't violating the Fourth Amendment, the answer under Leon is, so what? Leon says subjective belief is not enough for good faith. So we have a detective who says, gee, I can just open up digital files, and I believe that's okay. Under Leon, that is not good enough. Subjective good faith or belief is not good enough. And finally, with regard to Massey, I would say I would agree with my colleague that Massey is pretty well written, but it's completely different. I mean, Detective Howard comes on the scene after the plane has stopped, after they have the itinerary for the plane, after other officers and task forces are doing things, and Detective Massey goes and gets a warrant. Here, we have an officer who, contrary to Riley, just opens up digital files willy-nilly and goes and gets a warrant. So Massey and Warner, which have multiple layers of investigators and investigations, it's completely different. We don't have one officer who violates the Fourth Amendment and goes and gets a warrant. And both Leon and Groh tell us that an officer can't just violate the Fourth Amendment, write out an affidavit, go to the magistrate, and then say, hey, I'm relying on the magistrate. I mean, Groh says that with the bare bones affidavit that the officer did, and Leon says that. Both say an officer can't just, and this is my term, launder the evidence by going to the magistrate and having the magistrate, that's okay. And then the officer says, well, it must be okay because the magistrate said it's okay. Your Honors, for all these reasons, I request that you reverse Mr. Reddick's convictions and remand. Thank you. All right, counsel. Thank you both for helping us.